EX PARTE MARCELLUS E. FOSTER.

No. 2626.   Decided January 28, 1903.

**1.—Contempt—Habeas Corpus—Custody of Relator.**

Where relator had been committed, for contempt, to the custody of the sheriff, and the sheriff did not confine him in jail, but allowed him the liberty of the city, with the understanding that relator was amenable at all times to the sheriff's custody; Held, that relator being in such restraint as precluded his absolute and perfect freedom of action, he was authorized to sue out a writ of habeas corpus to be relieved from said custody and restraint on the part of the sheriff. Following Ex parte Snodgrass, 43 Texas Crim. Rep., 359.

**2.—Same—Practice and Procedure.**

Where the court verbally ordered applicant not to publish in his newspaper the testimony in a criminal case then on trial, until after verdict, which order defendant disobeyed, whereupon the court entered a judgment nisi against him assessing a fine and imprisonment; Held, the procedure was illegal and void. There should have been an order of record prohibiting the publication; and, upon relator's violation thereof, an affidavit should have been made against him, and an attachment issued requiring him to show cause why he should not be adjudged guilty of contempt for violating said order. It was not competent for the court, of its own motion and without affidavit, to adjudge him guilty of contempt and then attach him to show cause why the judgment should not be made final.

**3.—Same—Publication of Testimony of a Case Pending in Court—Constitutional Law.**

Our Constitution guarantees, in section 8 of the Bill of Rights, freedom of speech and liberty of the press; and section 10 guarantees to an accused a speedy public trial, and these provisions were intended to guaranty publicity to the proceedings of courts, and the greatest freedom in the discussion of the doings of such tribunals consistent with truth and decency. Held, under those provisions a court has no power, where the evidence is not obscene, to prohibit the publication of the testimony of witnesses in a murder case being tried before it; and the punishment of a party for contempt, for violating an order not to publish such testimony in a newspaper, was without jurisdiction and void.

From Harris County.

Original application for habeas corpus for release from a commitment for contempt for publishing, in a newspaper, the evidence in a murder case, in disobedience of the verbal order of the trial judge.

The opinion states the case.

*N. G. Kittrell* and *W. W. Walling,* for relator.

*Rob't A. John,* Assistant Attorney-General, for respondent.

No briefs for either party have come to the hand of the Reporter.

HENDERSON, JUDGE.—This is an original proceeding on habeas corpus to enlarge the relator from a commitment of the district judge of the Criminal District Court of Harris County on an alleged contempt, for publishing the evidence in the trial in said court of D. F. Williams et al., charged with murder, in the Chronicle, a daily newspaper published in the city of Houston.

The State, by her Assistant Attorney-General, has filed a motion to dismiss this case on the ground that the relator, when he sued out the writ of habeas corpus, and thereafter since that time, was not in the legal custody or restraint of the sheriff of Harris County; and evidence has been adduced before us upon that issue. The testimony, in effect, shows that relator was allowed by the sheriff the liberty of the city of Houston; and on one occasion, it seems, he left said city for a short time without leave of the sheriff, but returned to the city. The relator testified that he was told by the sheriff to consider himself under arrest, and that his movements must be under the control of said sheriff; that the sheriff was aware of his purpose to sue out the writ of habeas corpus,

and exercised toward him liberality, in enabling him to sue out the writ without confining him actually in jail; that the understanding was that he was in the custody of the sheriff, and, unless he should be released by the writ of habeas corpus, he was amenable to that custody, and would have to pay the fine. As we understand the testimony, this comes clearly within the rule laid down in Ex parte Snodgrass, 43 Texas Crim. Rep., 359, 3 Texas Ct. Rep., 588. A majority of the court in that case, after quoting certain articles of our code, used this language: "We deem it unnecessary to enter into a long discussion on these authorities, but suffice it to say that any character or kind of restraint that precludes an absolute and perfect freedom of action on the part of the relator authorizes such relator to make application to this court for release from said restraint." The motion of the State is accordingly overruled, and we hold that relator was entitled to the writ.

Relator has shown that no order of record was made in said case of State of Texas against Williams et al., prohibiting the publication of the evidence in said case, but that the judge merely, in open court, notified and ordered relator that the court would hold him in contempt of the court if said newspaper, of which he was the publisher, should publish said testimony in said case before a verdict was had. It was further shown that no affidavit was made by anyone charging relator with a violation of said verbal order; but on information, and of the court's own motion, he entered a judgment nisi against relator as for contempt, assessing his punishment at a fine of $100 and three days imprisonment in the county jail. Notice was then issued, requiring him to come before said court and show why said judgment should not be made final. It is urged by relator that this procedure was irregular and void; that, in the first place, conceding the court had jurisdiction, an order should have been made and entered of record prohibiting the publication of said evidence; that, if same was violated by the relator, then an affidavit should have been made (the contempt being a constructive one against him), and an attachment issued, requiring him to show why he should not be adjudged guilty of contempt for a violation of said order; and that it was not competent for the court, of its own motion, and without affidavit, to have in the first instance adjudged him guilty of contempt, and then attached him, to show cause why the said judgment should not be made final; and that such procedure on the part of the court was illegal and void. We are inclined to agree with this contention. 4 Enc. of Pl. and Prac., p. 776, and authorities there cited.

However, a more important question is raised, and we do not see fit to rest this decision upon the illegality of the procedure which was adopted. Relator insists (and in this he is borne out by the record) that in the publication which occurred in the Houston Chronicle, of which he was the editor and publisher, there was nothing of a character reflecting on the judge or the court, but he merely published a true statement of the testimony adduced from the witnesses in the case; and he says he was authorized to do this, notwithstanding the order of the

judge, because the testimony was given in the course of a public trial in a court of justice, and the Constitution guaranties a public trial, and also guaranties the freedom of the press.

We have given this subject that careful examination commensurate with its importance, mindful that, on the one hand, the dignity and authority of the courts must be maintained, while on the other, free speech, a free press, and the liberty of the citizen must be preserved. Both are equally valuable rights. If the court is shorn of its power to punish for contempts in all proper cases, it can not preserve its authority, so that, without any constitutional or statutory guaranty, this power is inherent in the court. But the Constitution itself, in our Bill of Rights, guaranties free speech and the liberty of the press. Of course, it was never intended, under the guise of these constitutional guaranties, that the power of the court should be trenched upon. Indeed, under our system of government, it was wisely intended that the authority of the court should be safeguarded and preserved, in order that all constitutional guaranties might be upheld for the safety and protection of the liberty of the citizen. We have examined a number of text books, and in some we find it stated in general terms that the court may prohibit the publication of testimony in certain cases, but that the publication must have a tendency to embarrass, impede, or obstruct the administration of justice, and the case must be pending at the time of the publication. Rap., Contempts, sec. 57; 7 Am. and Eng. Enc. of Law, 2 ed., p. 60, subdiv. 3. And the following cases are referred to in support of this proposition: Tenney's case, 23 N. H., 162; Sturoc's case, 48 N. H., 428; 97 Am. Dec., 630; United States v. Holmes, 1 Wall. Jr., 1, Fed Cas. No. 15,383; State v. Galloway, 5 Cold., 326; Dunham v. State, 6 Clark, 245; Shortridge's case, 99 Cal., 526; State v. Morrill, 16 Ark., 384; Rex v. Clement, 4 Barn. & Ald., 218. We have not had access to the common law case last referred to, but it would have little, if any, bearing upon the question, as it is an old English case. Tenney's case is not accessible to us. However, we have examined the other New Hampshire case, reported in 97 Am. Dec., supra, as well as the other cases named, and not one of them supports the proposition that the courts in this country have the power to restrain the publication of testimony developed in the trial of a case. Sturoc's case, supra, was a publication, not of evidence, but language abusive and defamatory of the court, and the proceedings thereof, calculated to obstruct the administration of justice, and was properly held a matter of contempt. The Arkansas case has no particular bearing on the subject. But in Galloway's case, supra, the court say that unquestionably the power exists on the part of courts to control the publication of their proceedings while in progress, but it says, "Not, perhaps, by direct attachment of the publishing party for publication, but by the exclusion from the court of parties who are there for the purpose of reporting the testimony or proceedings of the court," etc.; following Holmes' case, supra. But even this was not necessary to that decision, because the court held that

the matter complained of was not a contempt under the statutes of the State. However, in that case, in connection with the alleged testimony, the article was denunciatory and abusive of the court. Nor was the question properly before the court in Dunham's case. What was said by the court in that case was merely dicta. It was held in that case that the publication of the proceedings was not a contempt of the court. We also find in Shortridge's case, supra, which was a divorce case, some general expressions to the effect that the courts possess the power to prohibit the publication of testimony pending the trial, where such publication would tend to obstruct the administration of justice. But the court held in that case that the publication of divorce proceedings, notwithstanding a statute of California authorizing such proceedings to be private, did not subject the party to contempt, though he made the publication in violation of the order of the court; that the 'publication itself 'was not calculated to impede or obstruct justice. The general trend of that decision, we take it, favors the proposition that, where the proceedings are not of an obscene character (and we are not discussing that kind of a case here), the court has no power to prohibit the publication of testimony adduced on the trial. The fact that no decision can be found in support of the power on the part of the courts of this country to prohibit the publishing of evidence developed in the course of such trial is strongly persuasive of the absence of such power, for, if it had been assumed to exist, evidently somewhere some judge before this time would have attempted it, and we would have a report of the case. But even if it be conceded that some other court in some other State had decided in favor of the power of the courts to inhibit the publication of testimony, and to treat a violation of the order as a matter of contempt, then such decision, in order to be even persuasive, should afford some good and sufficient reason as its basis; otherwise it would be entitled to but little consideration, especially when we take into view our constitutional provisions which have a bearing on the subject. Section 8 of our Bill of Rights guaranties the freedom of speech and the liberty of the press. Section 10 guaranties to an accused person a speedy public trial by an impartial jury. If the Constitution guaranties a public trial, is it in the power of the court to make it a private trial? If not, then where is the power of the court to prohibit spectators, or to require or enforce thereafter silence on those who may witness and hear the proceedings? If there is no power on the part of the court to prevent spectators from rehearsing evidence, by the same logic the court has no authority to prevent a publication of the testimony. Our Constitution is but in accord with the genius and spirit of our free institutions, which is intended to guaranty publicity to the proceedings of our courts, and the greatest freedom in the discussion of the doings of such tribunals, consistent with truth and decency. And as has been well said, "When it is claimed that this right has in any manner been abridged, such claim must find its support, if any there be, in some limitation expressly imposed by the lawmaking power."

And this imposition must be in accord with the provisions of our Constitution guarantying the publicity of all trials, as well as the freedom of speech and of the press. We take it that the learned judge who exercised his authority in this instance did it, as he believed, in the interest of the due administration of the law; but the argument of convenience can have no weight as against those safeguards of the Constitution which were intended by our fathers for the preservation of the rights and liberties of the citizen. And even if there was a conflict here between the authority and dignity of the court, that should yield to the plain letter of the Constitution. We accordingly hold that the court had no power to prohibit the publication of the testimony of the witnesses in the case, and that his act in punishing the relator for contempt for violating that order was without jurisdiction, and was consequently void.

The relator is ordered discharged.

*Discharged.*