Tate v. State.

TATE, Sheriff, *v.* STATE, *ex rel.* RAINE.
RAINE *v.* STATE.

(*Jackson.*   April Term, 1915.)

1. **CONTEMPT. Publications relating to pending litigation. Power of court.**

It is the inherent right and power of courts to punish for contempt publishers of newspapers who, pending the trial of a case print matter for public circulation which is calculated to impede, embarrass, or affect the orderly trial and disposition of the case being heard.   (*Post, p.* 136.)

Cases cited and approved:   Shaller v. Garrett, 130 Tenn., 473; Murrell v. Rich, 131 Tenn., 378; State v. Galloway, 45 Tenn., 326; Scott v. State, 109 Tenn., 390; State v. Morrill, 16 Ark., 384; Cartwright's Case, 114 Mass., 230; Tinsley v. Anderson, 171 U. S., 101.

Cases cited and distinguished:   Regine v. Wilkinson, 41 U. C. Q. B., 47; Rex v. Parke, 2 K. B., 432; In re Shortridge, 99 Cal., 526; Patterson v. Colo., etc. Attorney-General, 205 U. S., 454; Globe Newspaper Co v. Commonwealth, 188 Mass., 449; Graham v. Williamson, 128 Tenn., 721.

Code cited and construed:   Sec. 5918 (S.)

2. **CONTEMPT.   Publications relating to pending litigation. Power of court.   Statute.**

Under Shannon's Code, sec. 5918, regulating the power of the courts to punish for contempts, where, during the pendency of a widely followed will case, the defendant's newspaper published a scare-head article, relating to the withholding from evidence by the court, after the jury had retired, of affidavits by a subscribing witness to the will, which article suggested that such subscribing witness had gone over to the contestants, which must have come to the knowledge of the jury, and so was calculated to destroy the effect of his previous testi-

Tate v. State.

mony favoring the will, such publication was within the statutory power of the court to punish as a contempt. (*Post, p.* 140.)

Code cited and construed:   Sec. 5918 (S.).

3. CONTEMPT.  Publications relating to pending litigation. Power of court.  Violation of order.

The power of the court to punish for contempt one publishing, during the pendency of litigation, matter tending to hinder or embarrass the court in the discharge of its functions is not dependent upon any preliminary order forbidding such publication being served by the court upon the publisher, since one violating the law becomes amenable to punishment irrespective of previous warning. (*Post, p.* 143.)

Cases cited and approved:   Ex parte Foster, 44 Tex. Cr. R., 423; In re Shortridge, 99 Cal., 526.

Case cited and distinguished:   Patterson v. Colorado, 205 U. S., 454.

## FROM SHELBY.

Appeal from the Circuit Court of Shelby County, to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— WALTER MALONE, Judge.

G. T. FITZHUGH and CARUTHERS EWING, for plaintiff.

W. G. CAVETT and T. K. RIDDICK, for defendant.

MR. JUSTICE GREEN delivered the opinion of the Court.

These two cases involve a contempt proceeding against Gilbert D. Raine, publisher of the News-Scim-

Tate v. State.

itar, a Memphis newspaper. He was adjudged guilty of contempt by one of the circuit courts of Memphis. This order was reversed by the court of civil appeals, and the cases are before us on petitions for *certiorari*. These cases came into this court near the close of the last term. They were heard along with other cases (*Shaller* v. *Garrett*, 130 Tenn., 473, 171 S. W., 486, and *Murrell* v. *Rich*, 131 Tenn., 378, 175 S. W., 420), involving the validity of the will of Caroline Cloth. The questions raised in the contempt proceeding were insufficiently presented at the last term, owing to a lack of time. Inasmuch as these questions were of importance and all parties interested in their correct determination, the court thought it proper to carry the matter over until the present term. It has now been fully argued before us.

During the trial of the case of *Murrell* v. *Rich,* in the circuit court of Shelby county, division 3, which involved the validity of the will referred to, and which was a case exciting much public interest, certain affidavits were filed in the cause after the proof was all in and argument had begun. These affidavits were filed by J. H. Lenow, a subscribing witness to the will which was being contested, and J. H. Malone, of counsel for the contestants. Certain matters were presented in the affidavits upon which it is unnecessary to comment, and it was requested that the hearing of evidence be reopened.

These affidavits were brought before the court during the absence of the jury. The court declined to per-

Tate v. State.

mit a reopening of the case and the introduction of any further testimony, and, in order to avoid any improper influence upon the jury, took steps to prevent the contents of such affidavits from coming to the knowledge of the jury.

The court addressed an order to the publishers of newspapers in the city of Memphis, instructing them not to make any publication that would directly or indirectly furnish information as to the affidavits. This order was served on the newspaper men, but on the same day the News-Scimitar, an afternoon paper, printed an article which brought about this proceeding. The article was printed under a headline which extended entirely across the front page of the paper as follows:

"Court Orders News Suppressed."

Then followed a subheading in large type:

"Injunction Served on the News-Scimitar Requiring that Mysterious Affidavit be Withheld from Public—Document Locked in Vault."

Below these headlines appeared the following news story:

"Mysterious affidavits pertaining to the Cloth will case, which were filed Monday morning in the office of the circuit court clerk, resulted in the issuance of an injunction, by Judge Pittman, who is trying issues of the 'missing pages' will of the late Mrs. Caroline Cloth. The order restrains any of the newspapers publishing in the city of Memphis from publishing directly

Tate v. State.

or indirectly, any information pertaining to such matters.

"The nature of the affidavits remains a profound secret. On the order of Judge Pittman they were placed in a vault in the circuit court clerk's office, and were not accessible to the News-Scimitar Monday. As arguments in the 'missing pages' will case had already been started, and testimony concluded three days ago, the affidavits were not admitted as evidence before the jury.

" 'J. H. Lenow,' mentioned in Judge Pittman's injunction, is supposed to have been a subscribing witness to the 'missing pages' will. Attorney J. H. Malone, who filed the affidavits, represents counsel opposing the will.

"It is understood that Judge Pittman's order to enjoin publication of the affidavits was done with the intention of preventing an exposure of the document's allegations, which were given free circulation on the streets Monday by gossipers. Both sides agreed to the ruling, and the affidavits were accordingly ordered withheld from the public."

After this publication the court cited Gilbert D. Raine for contempt. He appeared and acknowledged the service of the order referred to and accepted full responsibility for the publication in his paper. He claimed that he was within his constitutional rights in printing the article, and that the court had no power to prevent such a publication and was without power to punish him therefor.

Upon consideration of the matter the court imposed a fine and a jail sentence. The respondent later sued out a writ of error to review this action of the court.

This writ of error is styled "Gilbert D. Raine v. State of Tennessee." *T. G. Tate* v. *State of Tennessee ex rel. Gilbert D. Raine*, was a *habeas corpus* proceeding instituted by the respondent in the same matter. These two cases have been consolidated and heard together, and what will be said herein applies equally to both cases.

There can be no doubt of the right of courts to punish for contempt publishers of newspapers who, pending the trial of a case, print matter for public circulation which is calculated to impede, embarrass, or affect the orderly trial and disposition of the case being heard. This power is fully recognized in our own case of *State* v. *Galloway*, 5 Cold. (45 Tenn.), 326, 98 Am. Dec., 404. There is no dissension whatever in the authorities as to this power of the courts.

"The object of preventing and, if necessary, to punish, publications calculated to affect prejudicially the interest of suitors is that there may be a fair trial; that the stream of justice shall be allowed to flow unruffled by extraneous influences." *Regine* v. *Wilkinson*, 41 U. C. Q. B., 47.

"The reason why the publication of articles like those with which we have to deal is treated as contempt of court, is because their tendency, and sometimes their object, is to deprive the court of the power of doing that which is the end for which it exists—namely, to

Tate v. State.

administer justice fully, impartially and with reference solely to the facts judicially brought before it. Their tendency is to reduce the court which has to try the case to impotence so far as the effectual elimination of prejudice and prepossession is concerned. It is difficult to conceive an apter description of such conduct than as conveyed by the expression, 'contempt of court.' " *Rex v. Parke*, 2 K. B., 432. (1903.)

Considering the right of the courts of this country to hold in contempt publishers so interfering with pending cases, in view of the constitutional guaranties prevailing in every State as to the freedom of speech and freedom of press, the supreme court of California has observed:

The "liberty of the press must not be confounded with mere license. Liberty of the press stops where a further exercise would invade the rights of others. This provision of the constitution does not authorize the usurpation of the functions of the courts. Under the plea of the liberty of the press, a newspaper has no right to assail litigants during the progress of a trial, intimidate witnesses, dictate verdicts or judgments, or spread before juries its opinion on the merits of cases which are on trial. As stated before, what may be spoken may be written; and the converse of the proposition is true that what may not be spoken under such circumstances may not be written." *In re Shortridge*, 99 Cal., 526, 34 Pac., 227, 21 L. R. A., 755, 37 Am. St. Rep., 78.

The supreme court of the United States has fully sustained the power of the courts so to deal with publishers of objectionable articles pending the trial of a cause, and has said:

"A publication likely to reach the eyes of a jury, declaring a witness in a pending cause a perjurer, would be none the less a contempt that it was true. It would tend to obstruct the administration of justice, because even a correct conclusion is not to be reached or helped in that way, if our system of trials is to be maintained. The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, . . . of private talk or public print." *Patterson* v. *Colorado ex rel. Attorney General,* 205 U. S., 454, 27 Sup. Ct., 556, 51 L. Ed., 879, 10 Ann. Cas., 689.

The general result of all the cases is thus summarized in the Cyclopedia of Law:

"Publications concerning a pending case, trial, or judicial investigation calculated to prejudice or prevent fair and impartial action, which seek to influence judicial action by threats or other form of intimidation, which reflect upon the court, counsel, parties, or witnesses respecting the case, or which tend to corrupt or embarrass the due administration of justice; constitute contempt. The criminal intent of such publications is immaterial." 9 Cyc., 20, and cases cited.

For further authorities see cases collected in a note under *Globe Newspaper Co.* v. *Commonwealth,* 188 Mass., 449, as reported in 3 Ann. Cas., 761.

The liberty of the press is not a more sacred right than the right, to a fair and impartial trial, which the constitution guarantees to all litigants. If the newspapers are permitted at will to comment on pending cases and to bring to the attention of the jurors sensational rumors and matters which cannot properly be considered in the determination of the issues before them, there can be no such trial. That such publications can be made with impunity is not asserted in any jurisdiction, so far as we know. The courts must be empowered to keep jurors from improper influence pending their deliberations.

It has been asserted in two of our cases that the power to punish for contempt in Tennessee is purely statutory. *State* v. *Galloway,* 5 Cold. (45 Tenn.), 326, 98 Am. Dec., 404; *Scott* v. *State,* 109 Tenn., 390, 71 S. W., 824. Our statutes do declare that contempts shall not be punished except as therein provided. Shannon's Code, section 5918 *et seq.,* but see *Graham* v. *Williamson,* 128 Tenn., 721, 723, 164 S. W., 781.

Whether this attempted limitation of the courts' power to punish contempts is valid legislation we need not here determine. It has been held in several cases that the right of the courts to punish for contempt was—"founded upon the principle, which is coeval with the existence of the courts, and as necessary as the right of self-protection, that it is a necessary incident to the execution of the powers conferred upon the court, and necessary to maintain its dignity, if not its very existence. It exists independently of statute.

The legislative department may regulate the proced-
ure and enlarge the power, but it cannot, without
trenching upon the constitutional powers of the court
destroy the autonomy of that system of checks and
balances which is one of the chief features of our triple
. . . form of government, fetter the power itself.''
*In re Shortridge,* 99 Cal., 526, 34 Pac., 227, 21 L. R.
A., 755, 37 Am. St. Rep., 78.

See, also, *State v. Morrill,* 16 Ark., 384; *Cartwright's
Case,* 114 Mass., 230; *Tinsley v. Anderson,* 171 U. S.,
101, 18 Sup. Ct., 805, 43 L. Ed., 91.

The statute abundantly justified the action of the cir-
cuit court, however, herein, and it was not necessary to
resort to any inherent power.

Section 5918 of Shannon's Code is as follows:

''The power of the several courts of this State to is-
sue attachments, and inflict punishments for contempts
of court, shall not be construed to extend to any except
the following cases.

''(1)   The willful misbehavior of any person in the
presence of the court, or so near thereto as to obstruct
the administration of justice.

''(2)   The willful misbehavior of any of the officers
of said courts, in their official transactions.

''(3)   The willful disobedience or resistance of any
officer of the said courts, party, juror, witness, or any
other person, to any lawful writ, process, order, rule,
decree, or command of said courts.

''(4)   Abuse of, or unlawful interference with the
process or proceedings of the court.

Tate v. State.

"(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.

"(6) Any other act or omission declared a contempt by law."

The publication made by the News-Scimitar in this case was properly dealt with by the court under the statute, and the power of the court so to act may be referred to several of the subsections of 5918 of Shannon's Code. The publication in question, under the circumstances of this case, was certainly an unlawful interference with the proceedings of the court. Subsection 4.

It is hard to conceive of any publication more likely to improperly affect a jury than the one for which the editor of the News-Scimitar has been called on to answer herein.

In the first place, the article printed seems to have been displayed and rendered much more conspicuous than its value as a news item would have justified. The first headline extended entirely across the front page of the paper, and the subheading was in extra large type, and the article itself was printed in type about twice as large as was used in the body of the paper elsewhere. It was utterly impossible for this story to have escaped the notice of some of the jurors. The case on trial was a civil case, the jury was not under restraint, and most of them, no doubt, read the newspapers.

The publication indicated that some mysterious matters connected with the case were contained in the affidavits, and that these matters had been suppressed by the trial judge. It further showed that there was much gossip on the streets as to the contents of the affidavits, and tended to excite the curiosity of the jurors to that point where it was humanly impossible for them to have refrained from an endeavor to get outside information as to what these documents contained.

The article showed that J. H. Lenow, a subscribing witness to the will, upon whose testimony the case of the proponents of the will largely depended, had filed an affidavit along with J. H. Malone, one of the attorneys for contestants. It stated that Lenow's affidavit was filed by Malone. It was thus made to appear that one of the proponents' chief witnesses was taking some concerted action with one of the contestants' leading counsel, to the end that further evidence be placed before the jury after the case had been closed.

The character of this publication, the manner in which it appeared in the newspaper, its contents, and its insinuations could scarcely have failed, coming to the attention of the jury, to have prejudiced the proponents' case. The article seemed to show that Lenow, a subscribing witness to the will, had gone over to the enemy's camp, and was calculated to destroy the effect of his previous testimony in favor of the will.

In so far as we have gone, the court of civil appeals reached the same conclusion, but that court thought

Tate v. State.

that the story printed in the News-Scimitar did not come within the scope of the prohibition contained in the order served on the newspapers by the court below, and therefore that Raine was not in contempt.

It is not necessary for us to set out this order and discuss its terms. We, however, do not agree with the court of civil appeals. We think the publication made certainly came within the spirit of the prohibition contained in the court's order, if not within its letter.

Violation of this order, however, was not the essence of the offense. The offense consisted in making a publication which tended to obstruct, embarrass, and improperly influence the trial of the pending cause. If the publication was calculated so to interfere with the proper disposition of the cause, its author was guilty of contempt, regardless of any order.

As stated by the supreme court of California in a similar case:

"If the law, under the circumstances, prohibited the publication, the order of the court was superfluous; and the petitioner is censurable, regardless of that order, for the all-sufficient reason that he has violated the law. If, on the other hand, the law did not prohibit the publication, the petitioner had the right, under the law, to make it, and that right could not be abridged or taken away by an order." *In re Shortridge,* supra.

When a person violates the law he becomes amenable to punishment, and his *status* is not generally af-

fected by any previous warning he may have received as to his proper course of conduct.

In the matter of newspaper publications, regarding cases of interest pending in the courts, much latitude is allowed to the press. A substantially correct report of such proceedings and reasonable comment thereupon is not ordinarily objectionable, and should not be interfered with. *Ex parte Foster,* 44 Tex. Cr. R., 423, 71 S. W., 593, 60 L. R. A., 631, 100 Am. St. Rep., 866; *In re Shortridge,* 99 Cal., 526, 34 Pac., 227, 21 L. R. A., 755, 37 Am. St. Rep., 78. There is, however, a violation of law whenever anything is printed during the trial of a case which is likely to improperly influence the result, and the fact that he may have acted innocently does not relieve the publisher of responsibility.

Our courts are uniformly cautious in declaring persons to be in contempt. If the contempt be merely technical, and inadvertent, no court would be disposed to deal harshly with the offender. There is no danger that any judge will persecute the newspapers or unnecessarily embroil himself with them. The press is too powerful.

The publication in this case was made after Raine had consulted counsel. It was made deliberately, in as conspicuous, not to say as offensive, a manner as possible, and it was a flagrant contempt and a violation of the law regardless of any notice he may have received in reference thereto.

The responsibility of a publisher for such contempts cannot be made to depend upon any warning the court

Tate v. State.

may have seen proper to give him, or the terms in which such a warning may have been given. While it is doubtless a good practice on the part of trial courts to notify the press as to matters which should not be printed during the trial of a case, such practice is not necessary. If after such a warning a publisher persists in making offensive publications of this nature, his action becomes mere journalistic bravado, and must be dealt with severely.

So the punishment of the respondent in this case cannot be obviated by any refinements upon the scope and effect of the language used in the order served upon him by the court. The making of the publication after the order aggravated the offense, but the offense did not consist of a mere violation of the order.      .          .

It has been said by the supreme court of the United States that:

"When a case is finished, courts are subject to the same criticism as other people, but the propriety and necessity of preventing interference with the courts of justice by premature statement, argument, or intimidation hardly can be denied." *Patterson* v. *Colorado ex rel.*, 205 U. S., 454, 27 Sup. Ct., 556, 51 L. Ed., 879.

We cheerfully agree to the foregoing expression, and believe that court proceedings and the action of judges may be made the subject of criticism and full discussion after a case is concluded. Pending the hearing of a case, however, the courts must assert their power to prevent publications that may improperly influence results.

132 Tenn.10

Tate v. State.

From the views we have expressed it follows that the judgment of the court of civil appeals was erroneous, and must be reversed. The result reached in the circuit court was right. The case will be remanded to the circuit court of Shelby county for the execution of the orders heretofore made by that court in the case entitled here ''Gilbert D. Raine v. State of Tennessee,'' which was a contempt proceeding instituted against Raine in *Rich* v. *Murrell*. The judgment below should be corrected to show that respondent is punished for making a contemptuous publication rather than for a violation of the order served on him.

In the case of *T. G. Tate, Sheriff,* v. *State of Tennessee ex rel.*, which was a *habeas corpus* proceeding instituted in another division of the circuit court, the judgment of the circuit court will be reversed, and the *habeas corpus* proceedings dismissed.

Tax respondent Gilbert D. Raine with all the costs of both cases.