WR-83,719-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/14/2015 8:41:01 PM
Accepted 9/15/2015 8:47:33 AM
ABEL ACOSTA
CLERK

No. WR-83,719-1

## IN THE TEXAS COURT OF CRIMINAL APPEALS

---

# In re State of Texas *ex rel.* Abelino Reyna, *Relator*

---

## TEXAS CRIMINAL DEFENSE LAWYERS ASSOCIATION

# AMICUS CURIAE BRIEF

---

## ON MOTION TO FILE WRIT OF MANDAMUS
### FROM CAUSE NUMBER 2015-1955-3
### IN THE 54TH DISTRICT COURT OF McLENNAN COUNTY

---

KEITH S. HAMPTON
Attorney at Law
State Bar No. 08873230
1103 Nueces Street
Austin, Texas 78701
512-576-8484 (office)
512-762-6170 (cell)
512-477-3580 (fax)
keithshampton@gmail.com

ANGELA MOORE
Attorney At Law
State Bar No. 14320110
310 South St. Mary's Street
Suite 1830
San Antonio, Texas 78205
210.227.4450 (office)
210.364.0013 (cell)
210.855.1040 (fax)
amoorelaw2014@gmail.com

## IDENTITIES OF ALL PARTIES

Pursuant to the provisions of Rules 38.1(a), Texas Rules of Appellate Procedure, a complete list of the names of all parties to this action are as follows:

| | |
|---|---|
| **Relator:** | Abelino Reyna, McLennan County District Attorney |
| **Respondent:** | Matthew Alan Clendennen |
| **Counsel for Relator:** | Abelino Reyna<br>McLennan County District Attorney<br>219 N. 6th Street<br>Waco, Texas 76701 |
| **Counsel for Respondent:** | F. Clinton Broden<br>Broden, Mickelsen, Helms & Snipes, LLP<br>2600 State Street<br>Dallas, Texas 75204 |

## DISCLOSURE REGARDING FEES

Pursuant to Rule 11(c) of the Texas Rules of Appellate Procedure, counsel for amicus curiae represents that no fee has been or will be paid to counsel for preparation of this brief.

# TABLE OF CONTENTS

IDENTITIES OF ALL PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DISCLOSURE REGARDING FEES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv-v

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-13

      Observations about the Gag Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-6

      Is the Texas Supreme Court's holding in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992), applicable to gag orders in criminal cases?. . . . . 6-10

      Are the findings supporting the gag order in this case sufficiently specific?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

      Is the Tenth Court of Appeals' conditional grant of mandamus relief supported by the law and facts of this case?. . . . . . . . . . . . . . . . . . . . 12-14

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

*Attorney Grievance Comm' of Md. v. Gansler*, 835 A.2d 548 (Md. 2003). . . . . . 10

*Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992). . . . . . . . . . . . . . . . . . . . . . . *passim*

*Ex parte Foster*, 44 Tex.Crim. 423, 71 S.W. 593 (Tex.Crim.App. 1903). . . . . . . . 7

*Ex parte Foster*, WR-65,799-02 (Tex.Crim.App., delivered Dec. 30, 2010)(unpublished). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ex parte Graves*, 217 S.W.3d 744 (Tex.App. – Waco 2007). . . . . . . . . . . . . . . . . . 4

*Ex parte Lo*, 424 S.W.3d 10 (Tex.Crim.App. 2013). . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ex parte McCormick*, 129 Tex. Crim. 457, 88 S.W.2d 104 (1935). . . . . . . . . . . . . 7

*Ex parte Reed*, 271 S.W.3d 698 (Tex.Crim.App. 2008). . . . . . . . . . . . . . . . . . . . . . 8

*Ex parte Tucci*, 859 S.W.2d 1 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Grigsby v. Coker*, 904 S.W.2d 619 (Tex. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991). . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Fort Worth Star-Telegram*, 441 S.W.3d 847 (Tex. App. – Fort Worth 2014). 6

*In re Hearst Newspapers P'ship*, L.P., 241 S.W.3d 190 (Tex. App. – Houston [1st Dist.] 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Houston Chronicle Publ. Co.*, 64 S.W.3d 103 (Tex.App. – Houston [14th] 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . 8

*Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125 (Tex. App. – Fort Worth 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**CODES, RULES, AND CONSTITUTIONAL PROVISIONS**

Tex. Const. art. I §8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex.Const., art.I, §10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tex.R.App.Pro. 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex.R.App.Pro. 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Tex.R.App.Pro. 38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**OTHER AUTHORITIES**

Charles W. Wolfram, *Modern Legal Ethics* (1986). . . . . . . . . . . . . . . . . . . . . . . 9

France, Le Lys Rouge (1894). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Note: a Mystery of Motherhood: the Legal Consequences of Insufficient Research on Postpartum Illness*, 42 Ga. L. Rev. 193 (2007). . . . . . . . . . . . . . . . . . . . . . . . 5

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

COMES NOW the Texas Criminal Defense Lawyers Association, a non-profit organization of private and public defenders dedicated to the protection of the individual rights guaranteed by the state and federal constitutions and the aspiration for fairness in every case and justice for all, and files its Brief Amicus Curiae in Cause Number Writ No. 83, 719-01, *In Re State of Texas ex rel. Abelino Reyna*.

The purpose of this amicus curiae brief is to provide the Court with the perspective of the state criminal defense bar, specifically why the *Davenport* standard of review of gag orders should be explicitly recognized by this Court and why the gag order in this case cannot survive scrutiny.

## STATEMENT OF THE CASE

Counsel for amicus adopts the statement of the case as stated in Relator's and Respondent's briefs.

## SUMMARY OF FACTS

Counsel for amicus adopts the statement of facts as stated in Relator's and Respondent's briefs.

**ISSUES PRESENTED**

This Court ordered briefing on three questions:

> (1) Is the Texas Supreme Court's holding in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992), applicable to gag orders in criminal cases?
>
> (2) Are the findings supporting the gag order in this case sufficiently specific?
>
> (3) Is the Tenth Court of Appeals' conditional grant of mandamus relief supported by the law and facts of this case?

**SUMMARY OF ARGUMENT**

*Davenport* has been applied to criminal cases without controversy. Its analysis mirrors this Court's own jurisprudence. A departure from *Davenport* would create two standards for gag orders in Texas, a needless complication that would leave criminal defendants with less protection than civil litigants. The *Davenport* standard also advances the Sixth Amendment interests at play in gag orders in criminal cases. The trial court failed to provide any specific findings and the order lacked any evidence to support any of its assertions. According, the Tenth Court of Appeals was correct in vacating the gag order.

## ARGUMENT

### Observations about the Gag Order

First, the gag order in this case was not issued to ensure the State a fair trial. Instead, it purports to fulfill the district court's perceived *sua sponte* "duty to preserve the defendant's right to a fair trial by an impartial jury" by balancing these rights against First Amendment interests. Gag Order, p. 1. The trial court's order nowhere mentions the defendant's Sixth Amendment interest in having the effective assistance of counsel. As the Supreme Court has observed:

> An attorney's duties do not begin inside the courtroom door. He or she cannot ignore the practical implications of a legal proceeding for the client. Just as an attorney may recommend a plea bargain or civil settlement to avoid the adverse consequences of a possible loss after trial, so too an attorney may take reasonable steps to defend a client's reputation and reduce the adverse consequences of indictment, especially in the face of a prosecution deemed unjust or commenced with improper motives. A defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried.

*Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1043 (1991). Thus, the district court failed to address defense counsel's Sixth Amendment duties to ensure the fairness of the proceedings and ignored counsel's vital need to counter false or biased publicity already generated by the prosecution and police against his client.

Secondly, the gag order was copied from the order considered in *In re Houston*

3

*Chronicle Publ. Co.*, 64 S.W.3d 103 (Tex.App. – Houston [14th] 2001). The defendant's counsel in that case (the infamous Andrea Yates capital murder trial) did not claim that the order would jeopardize the fairness of the proceedings against their client or that it would even implicate the attorneys' effective assistance to defend their client. In fact, Yates' defense counsel made no complaint regarding the order in that case. Furthermore, it was a newspaper – not the actual parties – who sought mandamus. The trial court in this case unwisely adopted an agreed order from a plainly distinguishable case.

Thirdly, the appropriated *Houston Chronicle* order was issued only after defense counsel in that case was explicitly offered the opportunity to narrow and specify the court's order. In contrast, Mr. Clennenden's counsel had no say whatsoever in the wording of the order in the instant case and therefore was precluded from protecting the interests of his client in the same way as defense counsel was afforded in *Houston Chronicle*. Thus, the circumstances of the adoption of the *Houston Chronicle* gag order further distinguishes it from the instant case.

The two major decisions regarding gag orders in Texas criminal cases are *Houston Chronicle*, *supra* and *Ex parte Graves*, 217 S.W.3d 744 (Tex.App. – Waco 2007). These two cases illustrate the intersection of Sixth Amendment interests with the other interests implicated by gag orders. Particularly, they reveal the special role

4

of defense counsel and the effective assistance he is constitutionally required to provide.

*Ex parte Graves* involved the retrial of an inmate who was previously sentenced to death. Graves' attorneys won release from a gag order and their client was thereafter exonerated, in no small part attributable to the investigation by the press and the interest of the public. *Ex parte Foster*, WR-65,799-02, p. 24, n.6 (Tex.Crim.App., delivered Dec. 30, 2010)(unpublished)(Price, J., dissenting). *Houston Chronicle* involved the infamous Yates case, which was resolved by an acquittal by reason of insanity. *Note: a Mystery of Motherhood: the Legal Consequences of Insufficient Research on Postpartum Illness*, 42 Ga. L. Rev. 193 (2007).

Counsel in each case made the decision whether to oppose – or agree upon – an order purporting to protect the client. Given the favorable and just outcomes, a reviewing court is well-informed by defense counsel's acquiescence or challenge to gag orders in criminal cases. In short, defense counsel's position in the face of a gag order is a better guide to whether it genuinely advances a fair trial for the defendant.

Finally, the order in this case is unfair because it is one-sided. Relator argued to this Court that the gag order is even-handed because it applies to both the accused and to Relator. While true, this point is grossly misleading.

The application of the order under the present circumstances is hardly equitable. True, the gag order in this case forbids the prosecution as well as the defense from speaking in the defendant's favor. The court's ban on speech is balanced in the same way as "[t]he law in its majestic equality forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread." France, Le Lys Rouge (1894) ch. 7. In light of the fact that the prosecution has never spoken in the defendant's favor and the defendant's attorney has every reason to do so, the order disadvantages only the defense.

Defense counsel and his client are denied every act of free expression the agents of the State – police and prosecutors – have already availed themselves. Counsel for the accused is denied free speech at the moment at which it would most benefit his client's right to a fair trial with impartial jurors. The gag, then, effectively operates only against the person for whom the law seeks to protect.

With these observations in mind, amicus answers this Court's questions.

**Is the Texas Supreme Court's holding in *Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992), applicable to gag orders in criminal cases?**

The *Davenport* standard of review includes a presumption favorable to gagged counsel: "[A] prior restraint on expression is presumptively unconstitutional." *Davenport* at 10. This presumption fits judicial review of gag orders against defense

6

counsel quite well.

When this Court is confronted with a gag order challenged by defense counsel, a presumption that the order is hostile to the defendant's interests is valid. Defense counsel has a oath of undivided loyalty to his client and effective assistance to ensure he has a fair trial. No other participant in the criminal justice system has this purity of aspiration for a fair trial and incentive to counter propaganda already publicly disseminated. No other trial participant can enter the arena of public discourse to dispel rumors, correct misinformation, defend the accused's reputation or convey the defendant's point of view with the same vigor as the accused's own lawyer. If counsel believes a gag order will defeat his role in defense of his client, a court is well-advised to give strong deference to counsel's objections. The *Davenport* presumption embraces this deference.

It is not surprising that the *Davenport* decision gave no recognition to Sixth Amendment interests. *Davenport* involved a civil dispute. The Sixth Amendment applies to criminal and not civil cases. U.S. Const. amend. VI (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed"). While intended to vindicate the interests in fair trials, free expression and a free press, the *Davenport* standard is well-suited to fulfill Sixth Amendment

7

interests as well.

Under *Davenport*, a gag order can only be justified by "specific findings supported by evidence." Those findings must represent the "least restrictive means" to protect the proceedings from prejudice that is both imminent and irreparable. *Davenport* at 10. This standard has served the State of Texas well and without controversy, and is an established analysis for the review of efforts to restrain free speech and the free press. *See, e.g.*, *Ex parte Tucci*, 859 S.W.2d 1 (Tex. 1993)(vacating order restraining protesters's speech); *Grigsby v. Coker*, 904 S.W.2d 619 (Tex. 1995)(vacating order that parties in child custody not express themselves); *In re Fort Worth Star-Telegram*, 441 S.W.3d 847 (Tex. App. – Fort Worth 2014)(vacating order closing courtroom to public and press); *In re Hearst Newspapers P'ship*, L.P., 241 S.W.3d 190 (Tex. App. – Houston [1st Dist.] 2007)(vacating order prohibiting jurors from speaking after trial); *Tex. Mut. Ins. Co. v. Sur. Bank, N.A.*, 156 S.W.3d 125 (Tex. App. – Fort Worth 2005)(vacating order restraining insurance corporation's communications). It resolves gag orders in much the same way this Court struck down prior restraint actions in *Ex parte Foster*, 44 Tex.Crim. 423, 71 S.W. 593 (Tex.Crim.App. 1903) and *Ex parte McCormick*, 129 Tex.Crim. 457, 88 S.W.2d 104 (1935). Thus, *Davenport* shares this Court's own approach to the same issue in criminal cases.

*Davenport*'s demand that court findings be supported by evidence is also familiar to criminal cases. *See, e.g.*, *Johnson v. State*, 967 S.W.2d 410 (Tex.Crim.App. 1998)(finding of guilt must be supported by evidence). In fact, trial court findings are given strong deference in criminal cases only so long as they are supported by evidence. *Ex parte Reed*, 271 S.W.3d 698 (Tex.Crim.App. 2008)(reviewing court defers to trial court findings, but "will afford no deference to findings and conclusions that are not supported by the record"). The requirement for supported findings, then, is fully consistent with this Court's own jurisprudence.

Likewise, the determination of the means "least restrictive" of free expression is familiar to this Court. Embracing the *Davenport* presumption, this Court explained the purpose of the "least restrictive means" test, i.e., to ensure that speech is not unnecessarily restricted and to preclude the punishing or chilling of free expression. *See, e.g., Ex parte Lo*, 424 S.W.3d 10, 15 n.16 (Tex.Crim.App. 2013)(court must consider available, effective alternatives). Thus, this *Davenport* inquiry is not novel and has been applied without difficulty or controversy in criminal cases by this Court.

Finally, the reality of criminal cases illustrates the necessity of the *Davenport* standard. Civil cases do not experience widespread publicity with the frequency or intensity of criminal cases. By the time defense counsel arrives, the case has already received public attention, conclusions of the defendant's guilt have already formed,

and the presumption of the defendant's innocence publicly undermined.  Gag orders of defense attorneys in criminal cases defeat rather than vindicate the interest in a fair trial with impartial jurors. By placing a high burden to prove the necessity of a gag order, *Davenport* protects the surest countermeasure against harm to the promise of a fair trial by impartial jurors – the free expression of the defendant's own advocate.

The risk of the denial of a fair trial with impartial jurors arises not from the utterances of defense lawyers, but prosecutors and police.  Charles W. Wolfram, *Modern Legal Ethics*, §12.2.2 (1986)(noting that rules against prejudicial pretrial publicity "can be violated more readily by prosecutors in criminal cases than by defense lawyers").  There is no presumption of innocence in the court of public opinion, but an effective defense lawyer will nevertheless insist that there should be – speech which in no way prejudices the judicial process.  *Attorney Grievance Comm'n of Md. v. Gansler*, 835 A.2d 548, 573 (Md. 2003)(recognizing that "a criminal defense attorney may announce an opinion that his or her client is innocent with a lesser risk of causing prejudice because the law, itself, presumes the defendant's innocence"). On the contrary, this insistence strengthens the fundamental requirements of a fair trial and fulfills the Sixth Amendment guarantee of truly effective counsel.  While there may well be some remarks a defense attorney could say which could defeat the fairness of proceedings, a zealous demand for a

10

presumption of innocence to the court of public opinion is not among them.

The Texas Supreme Court stated that it gives "thoughtful consideration to [the Court of Criminal Appeals'] analysis in part to avoid conflicting methods of constitutional interpretation in our unusual system of bifurcated highest courts of appeal." *Davenport* at 14. *See also Ex parte Tucci, supra* at 8 (citing decisions from this Court). This Court should reciprocate and explicitly hold that *Davenport* applies in criminal cases. If this Court adopts a new standard more favorable to gag orders, it will not only generate the very conflict the Supreme Court has successfully avoided, but, in light of *Davenport*'s superior protection, will create an anomalous double-standard in Texas constitutional law whereby parties in civil cases have a greater assurance to fair trials than defendants in criminal cases.

**Are the findings supporting the gag order in this case sufficiently specific?**

Under *Davenport*, the trial court must make "specific findings supported by evidence." *Davenport*, 834 S.W.2d at 10. In an apparent effort to meet the Texas constitutional requirement of specificity, the trial court made the following predictions: (1) "pre-trial publicity will interfere with the defendant's right to a fair trial by an impartial jury" and (2) "a delay in proceedings would not lessen the publicity generated by this case." Gag order, p. 1. The district court also made

11

significant legal conclusions. None are fact-findings.

There is only one assertion which can charitably be regarded as an actual finding of fact: the existence of a "*specific threat* to the judicial process generated by *this* pre-trial publicity." Gag Order, pp. 1-2 (emphasis added). The "specific threat" to the due process of the defendant in this case is never actually specified or identified at all. The trial court's denunciation of "this" publicity presumably references something the judge read or heard. Whatever it was, it is absent from the record in this case.

Moreover, there is no evidence of any "threat," general or specified. If a mere conclusory declaration of an unspecified threat can justify a gag order, then every defense attorney in every criminal case with any publicity can be silenced. It effectively would reverse the presumption of unconstitutionality.

In any case, the judicial process is more than capable of surviving cases of great public interest. Venue, careful and thorough jury selection, judicial admonishments and other measures have proven quite effective in many high-profile criminal trials throughout legal history. This Court should regard the trial court's single, generalized, unsupported "finding" in this case as insufficient to defeat all interests in free speech, fair trials and the effective assistance of counsel as a matter of law.

**Is the Tenth Court of Appeals' conditional grant of mandamus relief supported by the law and facts of this case?**

The trial court's gag order was presumptively unconstitutional. *Davenport, supra; Graves, supra*. The one assertion that is arguably a finding of fact – that "this" publicity constitutes a "specific threat" – is not supported by any evidence at all. Moreover, the court gave no consideration whatsoever regarding the least restrictive means to achieve a fair trial for the defendant. The order is not narrowly tailored; in fact, it is not tailored at all. In light of the order's sweeping language, the absence of evidence to support it, and its failure to identify any imminent, irreparable harm to the defendant's right to a fair trial, the Court of Appeals was fully justified to conditionally grant the application for writ of mandamus.

Relator's refrain that the gagging of his adversary was sought for the charity of the same people his office publicly denigrated has a cynical, self-serving ring. The gag order leaves Relator's public narration unrebutted. This state of affairs does not advance the interest of a fair trial by impartial jurors for the defendant, but it does ensure only Relator's views and its governmental agencies find uncontradicted public expression.

Authoritarian regimes throughout the world spew propaganda while denying any speech which criticizes or contradicts it. There is no meaningful distinction

between this foreign political reality and the present circumstance. In either case, views contrary to the prosecutorial machinery are prohibited, leaving the public with only the "official" version of events, spun solely from the government's perspective with an eye toward conviction. The gag order impedes rather than advances the First, Fifth and Sixth Amendment interests involved in a pending criminal case. The only interests it truly advances belong solely to the prosecution.

There is a remedy for this state of affairs. It is found in Article I §§8 and 10 of the Texas Constitution and the federal constitution's own First, Sixth and Fourteenth Amendments. The remedy is free expression, most especially from the mouth of the accused's most devout advocate, his lawyer.

Ungagged, counsel can best ensure his client a fair trial through citizens who appear for jury duty in a state of impartiality, having heard the defendant's perspective and with the presumption that the accused is innocent. Mr. Clendennen and his counsel should be relieved of their suffocation, to the benefit of the bench, bar, press and public, and in ultimate service to justice. The Tenth Court of Appeals was correct. The vacation of the gag order should stand.

## PRAYER FOR RELIEF

*WHEREFORE, PREMISES CONSIDERED*, Amicus prays that this Court deny

Relator's application for writ of mandamus.

| | |
|---|---|
| /s/ Keith S. Hampton | /s/ Angela Moore |
| KEITH S. HAMPTON | ANGELA MOORE |
| Attorney at Law | Attorney At Law |
| State Bar No. 08873230 | State Bar No. 14320110 |
| 1103 Nueces Street | Tower Life Building |
| Austin, Texas 78701 | 310 South St. Mary's Street |
| 512-576-8484 (office) | Suite 1830 |
| 512-762-6170 (cell) | San Antonio, Texas 78205 |
| 512-477-3580 (fax) | 210.227.4450 (office) |
| keithshampton@gmail.com | 210.364.0013 (cell) |
| | 210.855.1040 (fax) |
| | amoorelaw2014@gmail.com |

ATTORNEYS FOR AMICUS

**CERTIFICATE OF COMPLIANCE:**  By affixing our signatures above we hereby certify that this document contains a word count of 2766 and therefore complies with Tex.R.App.Pro. 9.4(i)(3).

**CERTIFICATE OF SERVICE:** By affixing our signatures above, we hereby certify that a true and correct copy of the foregoing *Amicus Curiae Brief* was delivered electronically to all the parties, in compliance with Rule 11 (d) of the Texas Rules of Appellate Procedure: Mr. Abelino Reyna at abel.reyna@co.mclennan.tx.us  and Mr. Clint Broden at clint@texascrimlaw.com, on this day, September 14, 2015.