

# In the Court of Criminal Appeals of Texas

====

Nos. PD-0966-24 thru PD-0974-24

====

EX PARTE MICHAEL KLEINMAN, *Appellant*

====

Nos. PD-0975-24 thru PD-0980-24

====

EX PARTE AUSPRO ENTERPRISES, L.P., *Appellant*

====

On Appellants' Petitions for Discretionary Review
From the Third Court of Appeals
Williamson County

====

YEARY, J., delivered the opinion of the Court in which SCHENCK, P.J., and RICHARDSON, KEEL, WALKER, MCCLURE, FINLEY, and PARKER, J.J., joined. NEWELL, J., concurred.

This case involves pretrial applications for writs of habeas corpus in a group of Class C misdemeanor cases. The court of appeals affirmed

the county court at law's denial of relief, not on the merits as the county court at law had, but because Appellants "failed to meet their burden of establishing that they were under a restraint sufficient to justify their requested habeas relief[.]" *Kleinman v. State*, 706 S.W.3d 391, 398 (Tex. App.—Austin 2024). We granted Appellants' petitions for discretionary review to examine the court of appeals' conclusion regarding the "sufficiency" of the restraint. We reverse the court of appeals' judgment and remand the cases to that court for further proceedings.

## I. BACKGROUND

Appellant Kleinman and his business entity, Auspro Enterprises, L.P., were charged in separate complaints with fifteen instances of operating a so-called "head shop" in violation of Cedar Park Code of Ordinances, Sections 11.01.032 and 11.02.064—Class C misdemeanors.[1] Both Appellant and his business were convicted in municipal court. They then both appealed, seeking trial de novo in the Williamson County Court at Law No. 5.[2] To effectuate their appeal to the county

---

[1] Kleinman was charged by complaint with nine instances of violation of the ordinances, alleged to have occurred on December 22, 2021, and January 3, January 13, January 20, January 27, February 7, February 11, February 22, and March 1, 2022. Auspro Enterprises was charged by complaint with six instances of violation of the same ordinances, alleged to have occurred on December 22, 2021, and January 27, February 7, February 11, February 22, and March 1, 2022. Operating a "Head Shop" in violation of Cedar Park City Ordinances governing zoning constitutes a Class C misdemeanor, subject to a fine not to exceed $2,000, and each day a violation continues constitutes a separate offense. Code of Ordinances, City of Cedar Park, Texas, Chapter 1, Article 1, Sections 1.01.009, 11.01.032, 11.02.064, 11.08.003 & 11.09.001.

[2] *See* Article 44.17 (providing that in appeals from municipal courts to county courts, "the trial shall be de novo . . . the same as if the prosecution had been originally commenced in that court."); Article 45.042(b) (recodified as Article 45A.202(b)) (same).

court at law, as required by statute, they both posted appellate bonds, the sum of which totaled $64,881.72.

They next filed pretrial applications for writs of habeas corpus in the county court at law challenging the constitutionality of the city ordinances on vagueness grounds.[3] The county court at law denied relief on the merits of the constitutional challenges, having first concluded in its written findings and conclusions that Appellants were restrained in their liberty for purposes of pursuing pretrial habeas relief by virtue of the cash appeal bonds for their pending criminal charges filed in that court.

Appellants then pursued interlocutory appeal of the county court at law's denial of habeas relief on the merits. The court of appeals affirmed the county court at law's denial of relief, but it did not even reach the merits of Appellants' arguments at all. Instead, the court of appeals concluded "that pretrial habeas relief is not available to applicants who have been charged with a fine-only offense and are not in custody or have not been released from custody on bond." *Kleinman*, 706 S.W.3d at 398.

The court of appeals acknowledged that Appellants had filed appeal bonds to perfect their de novo trial in the county court at law, but it explained that any allusion in the conditions of the appeal bond to

---

All references to "Articles" hereinafter in this opinion refer to the Texas Code of Criminal Procedure. Also, all emphasis is added.

[3] "Specifically, they argue that the ordinance provides no objective criteria or guidance regarding what is and is not prohibited and relies on subjective assessments by City employees who have unfettered discretion to make these assessments. Additionally, [they] assert that the ordinance is vague because it lacks a culpable mental state." *Kleinman*, 706 S.W.3d at 394.

arrest for non-payment was merely "required to be included by statute and does not indicate that any type of arrest was currently looming." *Id*. (citing Article 17.08, Section 6 of which alludes to the recovery of "reasonable expenses incurred" for "rearresting the principal in the event he fails to appear" as required by the bail bond). This potential for re-arrest, the court of appeals concluded, was too speculative to constitute "a restraint *sufficient* to justify [Appellants'] requested habeas relief[.]" *Id*. And on that basis, it affirmed the county court at law's order denying pretrial habeas corpus relief. *Id*.

We granted Appellants' petitions for discretionary review to examine this conclusion.

## II. THE APPLICABLE LAW

This Court has explained that "[a] defendant may use a pretrial writ of habeas corpus only in very limited circumstances." *Ex parte Smith*, 178 S.W.3d 797, 801 (Tex. Crim. App. 2005). As the court of appeals also noted, pretrial habeas corpus relief is an extraordinary remedy, subject to interlocutory appeal. *Kleinman*, 706 S.W.3d at 394−95 (citing *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010)). But "habeas corpus" is not to be "used as a substitute for appeal." *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017). So, the pretrial writ should not be used "to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage." *Kleinman*, 706 S.W.3d at 395 (quoting *Ellis*, 309 S.W.3d at 79, which in turn quotes *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)).

Also, according to our law, the habeas remedy is predicated on the

notion that it exists for the benefit of applicants who are "restrained in [their] liberty." Article 11.01. So, this Court has said that "[w]hether an applicant is being restrained within the meaning of the habeas corpus statutes is a threshold question." *Id.* at 396–97 (citing *Ex parte Schmidt*, 109 S.W.3d 480, 481 (Tex. Crim. App. 2003)). We turn, then, first to an examination of the text and history of our habeas statutes.

Except for Articles 11.07 through 11.074, every article that presently appears in Chapter 11 of the Texas Code of Criminal Procedure could be found almost verbatim in the "Old Code" of 1856. Thus, it has long been the statutory law of this state that "[t]he writ of habeas corpus is the remedy to be used when any person *is restrained in his liberty*." Article 11.01. Chapter 11 also explains that it "applies to all cases of habeas corpus for the enlargement of persons . . . *in any manner restrained* in their personal liberty[.]" Article 11.64.

The scope of the writ is also statutorily set: It "is intended to be applicable *to all such cases of . . . restraint*, where there is no lawful right in the person exercising the power, or where, though the power in fact exists, it is exercised in a manner or degree not sanctioned by law." Article 11.23. And "restraint" is defined as "the kind of control which one person exercises over another, not to confine him within certain limits, but *to subject him to the general authority and power* of the person claiming such right." Article 11.22. "[I]f no legal cause be shown for the . . . restraint, or if it appear that the . . . restraint, though at first legal, cannot for any cause be lawfully prolonged, the applicant shall be discharged." Article 11.40.

The Texas Constitution mandates, in no less than Article I, that

the Legislature "shall enact laws to render the remedy speedy and effectual." TEX. CONST. art. I, § 12. Accordingly, the Texas Legislature has proclaimed that the provisions of Chapter 11 "shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it." Article 11.04. And this Court, early on, declared that "any character or kind of restraint that precludes the absolute and perfect freedom of action on the part of relator authorizes such relator to make application to this [C]ourt for release from said restraint." *Ex parte Snodgrass*, 43 Tex. Crim. 359, 362, 65 S.W. 1061, 1062 (1901).

This Court's decision in *Ex parte Foster*, 44 Tex. Crim. 423, 425, 71 S.W. 593, 594 (1903), is to the same effect as *Ex parte Snodgrass*. Both *Snodgrass* and *Foster* involved habeas applicants who were admitted to bail following contempt judgments without ever having been incarcerated. *Snodgrass*, 43 Tex. Crim. at 361−62, 65 S.W. at 1061−62; *Foster*, 44 Tex. Crim. at 424−25, 71 S.W. at 594. Both applicants were nevertheless found to have been restrained. *Id.*

Although the Texas Supreme Court has appropriately concluded that "[a] mere judgment of contempt will not justify the granting of a writ of habeas corpus[,]" and that "[t]here must be some character of restraint[,]" still, the Supreme Court explained, "[i]t is not required that [an] applicant for a writ of habeas corpus be actually confined in a jail." *Ex parte Calhoun*, 127 Tex. 54, 57, 91 S.W. 1047, 1048 (1936). The Supreme Court echoed this Court's pronouncement that "[a]ny character of restraint which precludes absolute and perfect freedom of action will justify issuance of the writ." *Id.* (citing *Snodgrass*, 43 Tex. Crim. at 359,

65 S.W. at 1061).

More recent cases have also adhered to this broad understanding of "restraint" for purposes of determining the availability of habeas corpus relief. For example, the applicant in *Basaldua v. State* complained in a purported appeal from a trial court's order imposing conditions of probation that those conditions were unconstitutional. 558 S.W.2d 2, 5–6 (Tex. Crim. App. 1977). This Court treated the purported appeal as an original habeas corpus application and determined that the applicant was indeed restrained by those probation conditions within the meaning of Article 11.22. *Id*. at 5.

Also, in *Ex parte Bain*, attorneys were forced by a trial court judge to represent a capital murder client. 568 S.W.2d 356 (Tex. Crim. App. 1978). They were held in contempt by the judge for announcing "not ready" instead of agreeing to try the case uncompensated. This Court held that they were "restrained," notwithstanding that they had made bail and "were later purged of contempt[,]" albeit only when they agreed, under protest, to prepare for trial. *Id*. at 358. And in *Ex parte Armes*, the Court concluded that an applicant, who was subject to "a $10,000 bond to ensure his appearance as a witness" in California, was "under restraint for habeas corpus purposes when released on bond or bail." 582 S.W.2d 434, 437 (Tex. Crim. App. 1979).

There are many other such cases as well. *See, e.g.*, *Ex parte Guzman*, 551 S.W.2d 387, 389 (Tex. Crim. App. 1977) (Odom, J., concurring) ("Since enactment of [the statutes quoted above] in 1856, the writ has never been limited to cases of '*severe* restraints on individual liberty [quoting the dissent],' but has been available to those

who are '*in any manner* restrained in their personal liberty [quoting Article 11.64].'"); *Ex parte Ormsby*, 676 S.W.2d 130, 132 (Tex. Crim. App. 1984) (recognizing, on authority of Judge Odom's concurrence in *Guzman*, that "outstanding collateral consequences of applicant's invalid conviction, imposed under the general authority and power of the State of Texas, is a current and enduring restraint on applicant's liberty"); *Ex parte Cathcart*, 13 S.W.3d 414, 417 (Tex. Crim. App. 2000) (noting that "restraint" as defined by Article 11.22 "has been construed broadly[,]" but refusing to find the applicant restrained when the pending criminal charge had been "dismissed and her bond closed"); *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001) ("Weise was restrained of his liberty within the meaning of [A]rticle 11.01 of the Texas Code of Criminal Procedure when he was charged with illegal dumping and released on bond to await trial."); *cf. Ex parte Eureste*, 725 S.W.2d 214, 216 (Tex. Crim. App. 1986) (failing to recognize that the applicant's release on bond after being held in contempt for refusing to honor a grand jury's subpoena duces tecum constituted "restraint," but only because the bond itself was "obviously invalid").

With this broad understanding of "restraint" in mind, we now turn to the issue at hand: whether Appellants in this case have "in any manner" suffered restraint so as to justify allowing them to proceed with their pretrial habeas corpus review.[4]

---

[4] For its part, "[t]he State acknowledges that, like a bail bond, the appeal bonds [in this case] obligate Appellants to appear in the [county court at law] when ordered to do so or face the future prospect of arrest. This Court must decide whether the obligation to appear on a fine-only criminal charge, without any prior actual physical confinement, acts [as] a restraint that precludes an absolute and perfect freedom of action." State's Appellate Brief at

### III. ANALYSIS

#### A. "Sufficient Restraint" Versus "Restraint"

At the outset, we reject the notion, suggested by the court of appeals' opinion, that the restraint that gives rise to habeas corpus relief must be more than *mere* restraint—that it must be *sufficient* restraint. *Kleinman*, 706 S.W.3d at 398. Article 11.22's definition of "restraint" is a broad one, both on its face and as judicially construed over the years. Moreover, Article 11.23 ("Scope of the writ") makes explicit that "[t]he writ of habeas corpus is intended to be applicable *to all such cases* of confinement and restraint," not just those in which a reviewing court has concluded that the restraint is onerous *enough* to merit consideration. Article 11.23.

#### B. This Case

But *have* Appellants in this case actually been restrained—*at all*? Appellants have been charged by complaints with the commission of Class C misdemeanor offenses. They have been convicted of those offenses in municipal court and now seek appeals in the form of de novo review in the county court at law. Article 44.17; Article 45.042(b) (recodified as Article 45A.202(b)). In order to perfect those de novo appeals, they have posted appellate bonds in a cumulative amount approaching $65,000. Article 45.0425(a) (recodified as 45A.203(c)). By statute, the terms of the appeal bond require Appellants to appear personally, "immediately . . . remaining at the court from day to day . . . to answer in the case." Article 45A.203(e). And Appellants' many appeal

---

31 (internal quotation marks omitted) (citing, *inter alia*, *Snodgrass*, 43 Tex. Crim. 362, 65 S.W. at 1062).

bonds conformed with these statutory requirements.

In *Ex parte Schmidt*, 109 S.W.3d at 483, this Court concluded that statutory county courts at law have, by virtue of Article 11.09, "the power to issue the writ of habeas corpus when a person is restrained *by an accusation or conviction* of misdemeanor."[5] On their faces, neither Article 11.09 nor the Court's opinion in *Schmidt* exclude Class C misdemeanors from their scope. It is true that Class C misdemeanors do not carry punishment by incarceration, being punishable by no more than "a fine not to exceed $500." TEX. PENAL CODE § 12.23. Nor do they "impose any legal disability or disadvantage." TEX. PENAL CODE § 12.03(c). Nevertheless, do (1) the many complaints filed against Appellants, (2) their convictions (albeit non-final) in municipal court, and (3) the appeal bonds they have posted to assure their presence for the de novo proceedings in the county court at law combine to constitute "restraint" as that term is used in Articles 11.01, 11.04, 11.09, 11.22, and 11.23 of the Code of Criminal Procedure, and *Schmidt*?

We conclude that, *at least* in combination, these circumstances have accrued to cause Appellants to fall under "the kind of control which one person exercises over another . . . to subject [them] to the general

---

[5] For purposes of charging misdemeanor offenses in municipal court, a complaint is "a sworn allegation charging an accused person with the commission of an offense. Article 45A.002(1). Albeit without citation to authority, the late Professors Dix and Schmolesky have observed that, "[i]n the pretrial context, the existence of pending charges is generally sufficient to show restraint." George E. Dix & John M. Schmolesky, 43 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 35:4 (3d ed. 2011), at 261. They do not suggest that complaints alleging Class C misdemeanors fall under an exception to this general rule.

authority and power" of the State. Article 11.22. In short, Appellants have been "restrained" according to Articles 11.01, 11.09, and 11.23. The court of appeals erred to conclude otherwise.

### C. The Court of Appeals' Opinion

In concluding that Appellants were *not* "sufficiently restrained," the court of appeals relied on the following facts: (1) that Appellants were never placed in custody to answer to the complaints filed against them; (2) that they were not released from custody on bond (having never been in any form of actual physical custody to begin with); and (3) that any threat of arrest or confinement as a consequence of failing to pay the fine, which was the only punishment assessed (or that could have been assessed) for this Class C misdemeanor offense, was too speculative to constitute a restraint on their liberty. *Kleinman*, 706 S.W.3d at 397−98. But besides other courts of appeals opinions,[6] the

---

[6] The court of appeals identified two decisions of its sister courts of appeals that it believed supported its conclusion. *Kleinman*, 706 S.W.3d at 397. First, it cited *City of El Paso v. Alvarez*, 931 S.W.2d 370, 379 (Tex. App.—El Paso 1996), for the proposition that a complaint filed in municipal court "does not confine the defendant or restrain her liberty in any manner." It is highly doubtful, however, that this proposition is consistent with Article 11.09 as later construed by this Court in *Schmidt*. *See Schmidt*, 109 S.W.3d at 483 (concluding that statutory county courts at law have, by virtue of Article 11.09, "the power to issue the writ of habeas corpus when a person is restrained *by an accusation or conviction* of misdemeanor"). Second, the court of appeals cited an unpublished opinion in *McCann v. State*, Nos. 14-97-00563-CR & 14-97-00564-CR, 1997 WL 786951 (Tex. App.—Houston [14th Dist.] Dec. 23, 1997) (not designated for publication), for the proposition that a fine imposed in municipal court does not constitute a "restraint" under Chapter 11. Of course, this Court is not "bound by the decisions of the courts of appeals—and much less by those that are unpublished." *Hyland v. State*, 574 S.W.3d 904, 913 (Tex. Crim. App. 2019). In any event, both *Alvarez* and *McCann* cited for authority the Texas Supreme Court's 1926 opinion in *Ex parte Beamer*, 116 Tex. 39, 285 S.W. 255 (1926). But *Beamer* is quite distinguishable.

main source for this proposition seems to have been certain federal cases. *See id.* at 397 (citing five cases from four federal circuit courts of appeals for the proposition that "federal habeas relief is not available for violations with punishments that are fine only"). The court of appeals here also cited this Court's opinion in *Ex parte Lewis*, 219 S.W.3d 335, 351 (Tex. Crim. App. 2007), for the proposition that offenses punishable by fine only are "exclude[ed]" from those that may be thought to result in a restraint of liberty for purposes of seeking habeas corpus relief. We next address each of these propositions in turn.

### 1. Federal Cases Construing 28 U.S.C. § 2254(a)

The federal cases the court of appeals cited do not purport to speak to what constitutes "restraint" for purposes of Chapter 11 of the Texas Code of Criminal Procedure. Instead, they construe what it means to say that a person is "in *custody* pursuant to a judgment of a State court" for purposes of the federal statute governing federal habeas corpus review of state court convictions. 28 U.S.C. § 2254.[7] It is true that

---

*Beamer* involved a contempt proceeding arising from a civil matter. Although the district court judge declared the applicants to be in contempt, it declined to impose any punishment whatsoever against them, ordering only that they pay the costs of the contempt proceeding itself. *Id.* at 41, 285 S.W. at 255. The Supreme Court declined to reach the merits of the ensuing habeas corpus applications, concluding that the applicants had not been "restrained of their liberty." *Id.* at 43, S.W. at 256. We do not regard this as particularly compelling precedent for the propositions that neither a complaint filed, nor a fine imposed, in municipal court constitutes "restraint" under Chapter 11.

[7] 28 U.S.C. Section 2254(a) reads, in its totality:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person *in custody* pursuant to a judgment of a State court only on the ground that he is *in custody*

these cases construe "custody" *not* to include "a fine, by itself," holding that this "imposition . . . is not sufficient to meet § 2254's jurisdictional requirements." *Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir. 2010).[8]

But in considering these federal cases, two critical distinctions must be borne in mind. First, they construe the scope of the word "custody" for purposes of federal review of final state court judgments—not the word "restraint" in our state statutory habeas corpus scheme, which carries its own explicit definition and history of judicial construction.[9] Second, Section 2254(a) pertains to *post-judgment* habeas

---

in violation of the Constitution or law or treaties of the United States.

28 U.S.C. § 2254.

[8] Of like import, and also cited by the court of appeals: *Obado v. New Jersey*, 328 F.3d 716, 718 (3rd Cir. 2003) ("The payment of restitution or a fine, *absent more*, is not the sort of sort of significant restraint on liberty contemplated in the 'custody' requirement of the federal habeas corpus statutes.") (internal quotation marks omitted); *Spring v. Caldwell*, 692 F.2d 994, 999 (5th Cir. 1982) (noting "the established rule that federal courts do not have habeas jurisdiction in fine-only cases"); *Hanson v. Circuit Court of First Judicial Circuit of Illinois*, 591 F.2d 404, 407 (7th Cir. 1979) ("We hold that a fine-only conviction is not a restraint on individual liberty."); *cf. Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (holding, similarly, in an action seeking relief from a federal conviction under 28 U.S.C. § 2255, "that a fine-only conviction is not enough of a restraint on liberty to constitute 'custody' within the meaning of the habeas corpus statutes"). *Kleinman*, 706 S.W.3d at 397.

[9] Our own statutory scheme also defines what it calls "constructive custody," and it does so independently of its statutory definition of "restraint." Article 11.21 reads:

The words "confined", "imprisoned", "in custody", "confinement", "imprisonment", refer not only to the actual, corporeal and forcible detention of a person, but likewise to any coercive measures by threats, menaces or the fear of injury, whereby one person exercises control over the person of another, and detains him within certain limits.

corpus petitions in federal courts, seeking relief from final state convictions—not *pretrial* habeas applications filed in state courts. We address the significance of these distinctions next.

**"Custody" versus "restraint":** The United States Supreme Court, in construing the federal statute, has said that it "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1969). Instead, "[i]ts mandate is broad with respect to the relief that may be granted." *Id*. Accordingly, the Supreme Court has concluded that parole, for example, is a kind of constructive "custody" that triggers the statute. *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). Similarly, a defendant who was at large on a personal recognizance bond following his conviction for a misdemeanor offense, pending execution of sentence, was deemed to be "in custody for purposes of the habeas corpus statute." *Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County*, 411 U.S. 345, 351 (1973).

But the limits of such constructive custody under the federal statute, though broad, are not boundless. More recently, the Supreme

---

Thus, our own statutory concept of "custody" is not limited to physical confinement. But even Article 11.21's definition of "constructive custody" retains an element of "detention" of some kind, by force or threat. In contrast, Article 11.22's definition of "restraint" requires less than "confine[ment] . . . within certain limits," and need only involve "the kind of control which one person exercises over another . . . to subject him to the general authority and power of the person claiming such right." Article 11.22. It would not be unreasonable to believe that Section 2254(a)'s use of the word "custody" to define the scope of *federal* habeas review of state court convictions was likewise meant to convey something more "confining" than Article 11.22's more-encompassing definition of "restraint."

Court concluded that the mere possibility of the use of a conviction against an applicant whose sentence was "fully expired[,]" to enhance his punishment for a subsequent offense, does not amount to custody under the statute. *Maleng v. Cook*, 490 U.S. 488, 492 (1989). The Supreme Court observed that, "[w]hile we have very liberally construed the 'in custody' requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction." *Id.*

The Supreme Court also declared that collateral consequences of a conviction "are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Id.* And the lower federal appellate courts have likewise restricted the statute. Some of them have concluded, not only that fine-only punishments do not invoke the statute, but also that the requirement of sex-offender registration for convicted applicants who challenge no other aspect of their "custody" are likewise not cognizable. *See Bailey*, 599 F.3d at 981 (citing *Virsnieks v. Smith*, 521 F.3d 707, 721 (7th Cir. 2008)).

This Court, however, has construed the word "restraint" for purposes of Chapter 11 of the Code of Criminal Procedure more expansively. The Court has long recognized, in felony and misdemeanor cases alike, that the collateral consequences of a conviction may operate as a restraint of liberty for purposes of, if not always Article 11.07, then at least the rest of Chapter 11.[10] Thus, federal cases construing

---

[10] Article 11.07, governing post-conviction applications for writs of habeas corpus in felony cases, speaks in terms of "confinement" rather than "restraint." Article 11.07, § 3(c). But since 1995, confinement has been defined by the statute itself to *include* "any collateral consequence resulting from the

"custody" for purposes of Section 2254(a) prove to be less than perfect analogs for our construction of the various provisions of Chapter 11. Our own statutes contemplate entertaining the habeas writ application for "*all* such cases of . . . restraint[,]" applying Chapter 11 "to *all* cases of habeas corpus for the enlargement of persons . . . *in any manner* restrained in their personal liberty[.]" Articles 11.23, 11.64.

**Post-conviction versus pretrial "restraint":** Moreover, Section 2254 deals exclusively with federal habeas review "pursuant to the judgment of a State court[.]" 28 U.S.C. § 2254(a). It does not authorize interlocutory federal habeas corpus review of state cases at the *pretrial* stage, such as those that may be appropriate for habeas relief under Chapter 11. It may well be that a federal *post-conviction*

---

conviction that is the basis of the instant habeas corpus." Acts 1995, 74th Leg., ch. 319, § 5, p. 2771, eff. June 7, 1995. Thus, a habeas corpus applicant convicted of a felony no longer need be "in actual physical custody" before the restraint attendant to his conviction may entitle him to relief. *Ex parte Harrington*, 310 S.W.3d 452, 456−57 (Tex. Crim. App. 2010).

Accordingly, this Court has found matters such as the use of a felony conviction for later enhancement of punishment for a subsequent offense, or the onus of sex-offender registration, to justify post-conviction relief even for applicants who have completed their sentences. *E.g.*, *Ex parte Like*, No. WR-70,021-01, 2008 WL 2677329 (Tex. Crim. App. del. July 2,2008) (not designated for publication); *Ex parte Vansumeren*, No. WR-81,368-01, 2016 WL 548410 (Tex. Crim. App. del. Feb. 10, 2016) (not designated for publication). In post-conviction habeas proceedings in *misdemeanor* cases, moreover, collateral consequences have *always* been considered restraint for purposes of proceeding with a writ application under Article 11.09. *See Ex parte Renier*, 734 S.W.2d 349, 353 (Tex. Crim. App. 1987) (concluding that a felony habeas applicant who could not proceed under pre-1995 Article 11.07, because not "confined," could nevertheless pursue an original writ application, just as do habeas applicants challenging misdemeanor convictions who can identify collateral consequences amounting to restraint) (citing *Ex parte Crosley*, 548 S.W.2d 409 (Tex. Crim. App. 1977); *Ex parte Phelper*, 442 S.W.2d 695 (Tex. Crim. App. 1969)).

habeas applicant, who has been finally convicted and has been punished by no more than a fine, may not be said to suffer even the kind of constructive custody the United States Supreme Court has recognized as sufficient to trigger Section 2254(a).

Indeed, it is possible that, in a *post-conviction* context, if the only restraining circumstance an applicant could point to is the imposition of a fine, with no attendant collateral consequences, we might agree that he has not been restrained *even for purposes of Chapter 11*.[11] After all, such a *post-conviction* applicant can arguably avoid all possible constraints on his liberty "simply by paying the fine[.]" *See Kleinman*, 706 S.W.3d at 398 (quoting *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir. 1984)).[12] But in a *pretrial* context such as this one, Applicants are not simply faced with the prospect of having to pay a fine, and nothing more.

Unlike the *post-conviction* applicant who has completed his sentence, if any, and has only his fine to pay, Applicants in the present cases remain under formal threat of prosecution—indeed, they have already been preliminarily, if not finally, convicted in municipal court—and are under the duress of an appeal bond that assures their attendance at a trial de novo at the risk of arrest and forfeiture of the

---

[11] Of course, we need not, and do not, decide that question today.

[12] Tinder was a juvenile offender whose adjudication of delinquent conduct in a Massachusetts state court resulted in a period of probation that had expired before he filed his federal petition for writ of habeas corpus under 28 U.S.C. Section 2254. *Tinder*, 725 F.2d at 802. The only remaining obligation he suffered was to pay court-ordered restitution. *Id*. The First Circuit analogized this situation to a fine-only scenario, declaring the possibility of restraint due to non-payment of restitution too speculative to amount to "custody" for purposes of the federal statute. *Id*. at 804−06.

bond. Under these circumstances, we can only conclude that they are "subject . . . to the general power and authority" of the State. Article 11.22. And we therefore conclude that these circumstances have at least combined to "preclude[] [Applicants'] absolute and perfect freedom of action[.]" *Snodgrass*, 43 Tex. Crim. at 362, 65 S.W. at 1062.

## 2. This Court's Opinion in *Ex parte Lewis*

Twice the court of appeals also cited *Lewis* for the proposition that "[t]he concept of liberty restraints excludes punishments for offenses 'for which the punishment is a fine or the forfeiture of property.'" *Kleinman*, 706 S.W.3d at 396, 397 (quoting *Lewis*, 219 S.W.3d at 351). *Lewis*, however, is also distinguishable. There, the Court's opinion endeavored to construe our state constitutional protection against double jeopardy, found in Article I, Section 14 of the Texas Constitution. TEX. CONST. art. I, § 14. Specifically, the Court was responding to the State's assertion that this state constitutional provision "applies only to acquittals." *Lewis*, 219 S.W.3d at 350−51. But the Court recognized independent double jeopardy significance to the fact that our state double jeopardy provision contains two clauses.[13] One of those clauses protects the people against multiple prosecutions for the same offense regardless of the outcome of a first trial. The other clause protects the people against subsequent prosecution after being once found not guilty. This Court remarked that "the language 'jeopardy of life or liberty' in the first clause suggests application only to death or imprisonment—excluding

---

[13] Article I, Section 14 of the Texas Constitution provides: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST. art. I, § 14.

offenses for which the only punishment is a fine or the forfeiture or property." *Id*. at 351. The court of appeals believed this observation should translate into a conclusion that a fine-only offense does not amount to a "restraint" for habeas corpus purposes, since it does not impact a defendant's liberty. *Kleinman*, 706 S.W.3d at 397.

But neither Article I, Section 14, nor *Lewis*, mentions the word "restraint"—*at all*—much less purports to determine how that term should be understood in the context of Chapter 11 of the Code of Criminal Procedure. *Lewis* stands for the proposition that a person already *convicted* once of a fine-only misdemeanor may be tried a second time for that offense, consistent with Article I, Section 14, of the Texas Constitution, even if that same person could not be tried a second time had he been *acquitted* of that offense. That does not necessarily mean that the fine does not satisfy Article 11.22's definition of "restraint" for purposes of Article 11.23, which expressly defines the scope of the *writ*. The court of appeals has unfortunately mixed constitutional apples (our state constitution's double jeopardy clause) with statutory oranges (Chapter 11's definition of "restraint").

And in any event, as we have pointed out *ante*, Appellants have yet to be finally convicted of their fine-only offenses. Whether they could be prosecuted again once they *have* been convicted is wholly beside the point. In the *pretrial* context, the question is whether they remain presently restrained by (1) the complaints filed against them, (2) their preliminary convictions, and (3) their appellate bonds—even if they may eventually—*post-conviction*—be subject to nothing more than the requirement that they pay a fine. We conclude that they do.

### IV. CONCLUSION

Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for further proceedings not inconsistent with this opinion.

**DELIVERED:**                                             July 30, 2025
**PUBLISH**